This is the postponed case from our September sitting Burnside v. Wenerowicz, number 11-4481, Messrs. Gelman and Gonzales. Mr. Gelman, before we start, how you feeling? I'm feeling really very good, better than I was before the event. I want to thank the court for extending the courtesy. No problem. We just want to make sure you get another 30,000 miles on you. Thank you. Norris Gelman for appellant Derek Burnside. I'd like to reserve two minutes for rebuttal. That's fine. The first question is 2254 D1 talks about a need to pay much attention as to how the judges in the state court rationalized their, how they got to a result? I do not think so. I think it's the result, the decision that is at issue here. The decision turned on whether or not the error was harmless. Two of the three judges found the exclusion of the statement, I burned a guy, to be error. They found it exculpatory. They found it trustworthy. They found it erroneous. And that's Joyce and Klein. However, they divided on whether or not it was harmless. And Judge Joyce said it was not harmless. Judge Klein said it was harmless, was injurious. Well, I thought it was. Well, did they get, the question I have is did they get to the due process question on the merits? Does it appear to you that Joyce got to the issue of due process? Well, I think as a matter of state law, he said the exclusion was erroneous. It was error. But it was harmless error. And Judge Klein said it was not harmless. This court doesn't have to defer to their harmless error analysis. You do your own analysis under Brecht. But it would be your position, I take it, that we do need to defer to their decision that it was error under state law. I would argue that, yes. And that's the decision. There's a decision there because that's two of the three judges agreeing on error as a matter of state law. So when Judge Joyce says that the accused is entitled to a fair trial but not a perfect trial, is that, in your view, an allusion to the due process issue? Well, a fair trial always smacks of due process. Whenever one says denial of a fair trial, it couldn't be attached or hooked to a due process argument. I don't think this superior court was involved in a due process analysis here. I think they were analyzing this under state law, deciding it under state law, and disposing it that way. I believe due process was clearly raised. But this case, like many other cases, they don't grapple with the federal aspects of the claim. They are pretty much locked into state law. But we have one judge, then, that doesn't address the due process question, right? Well, yes. You have Judge Del Sol, who says it was not error at all. It was properly excluded. We have one judge that appears to address the due process question and say there is no violation, and another that appears to address it and say there is. Yes. So there's no majority on the due process question. No. There's a majority on state law. So if there's no due process, then there's no deference. That would be my position, that this state court did not set out to rule or rule on due process of law under the federal constitution. And as such, you don't have to give them deference in that area. Don't you have to give deference to the result? If that's what, I mean, the lead in the 2254 D1 does say resulted in something that is a violation of, et cetera. Well, I think you can give deference to a result that is entirely devoted to state law. There's not a federal case cited by any of the judges. And I'm not sure you have to give deference to a decision that is predicated entirely on state law. Let's assume we get to the merits. How does the statement, I burned a guy last night, supposedly given by Mr. Vasquez to a 12-year-old, exculpate Mr. Burnside? In other words, there was joint responsibility in this case, right? There was a conspiracy conviction. Was there not? Yes. So how does the fact that Vasquez may have said he burned a guy last night exculpate the person who was indicted with him? Just initially, as a preliminary matter, the recipient of the statement was 15. Oh, 15. He was 20 when he was interviewed by the New York Times. I'm sorry. I thought he was 12. But he was underage. Yes. It's a felony murder prosecution. There are two ways to convict someone of felony murder in Pennsylvania. One is a principal. One is an accomplice. Now, if you're trying to convict Burnside as the principal, which is what the court found unanimously, the superior court found unanimously that the evidence was sufficient to convict Burnside, my client, as the person who set this deceased on fire. They say that in their opinion. And if you're trying to litigate felony murder and trying to get out from under being the principal, that statement, I burned a guy, is very helpful, very helpful. It undermined the Commonwealth's evidence that Burnside set the deceased on fire. But there's not also a conspiracy conviction? Yes. So does it really make any difference who actually did the burning of Mr. Bell? Yes, it does. In what way? Yes. If my client is not the principal, and then they have to find Vasquez to have been the principal for my client to have been a co-conspirator. And if you have, I burned a guy last night, you can successfully argue that he's not the principal. And you have to find that he conspired or was an accomplice. Finding that from the testimony of these jailhouse witnesses is next to impossible. Because they don't know who did what. They're vague on any detail. And Pennsylvania law is simply that presence at the scene of a crime coupled with knowledge that somebody else is going to commit that crime, coupled with running away after the crime. Wait a minute. Let's just run through the witnesses. You've got Mr. Parker, who said that he heard shouting, don't do that. He heard an explosion. About ten minutes later, he saw Bell coming, badly burned, coming out and accompanied by Burnside and Vasquez. Gantz, who was a jailhouse informant, reportedly heard Mr. Burnside say that he was tired of someone asking him for crack, so, quote, so I set him on fire, close quote. Lilly, another jailhouse informant, said that Burnside told him about that he and Vasquez poured lighter fluid on Bell and then set him on fire. Brandon Beatty, another jailhouse informant, said Burnside told him that he and another man had lit someone on fire in exchange for crack. Noel Fernandez, a jailhouse informant, said Burnside showed him a newspaper headline and described how, quote, they lit him, Bell, on fire, close quote. That's pretty, that's a lot of testimony. It's a lot of testimony, but it's all impeached. I mean, these are all people who come forth years later looking for a deal on their open cases. Well, if it was impeached, then why was there a conviction? Oh, there was a conviction because the jury felt that Burnside, my client, set the guy on fire. That he was the principal. Because the deceased sister said. And if the Vasquez statement came in, you really think that would have changed everything around? I do. If the Vasquez statement came in. Through the statement to Rodriguez, I guess. Yeah, but the Vasquez statement doesn't exonerate your man from anything, from your perspective, other than lighting the victim. I mean, it doesn't say he wasn't there. It doesn't say that he tried to stop it. Exactly. In other words, it doesn't contradict in any way the other evidence that Judge Ambrose just put before you. Right? I mean, it takes him out of being a principal. And redirects the jury's focus to whether he's a conspirator and what that evidence is. Now, if this jury, as is highly likely, because the Superior Court said the evidence was sufficient to find Burnside, set this man on fire. If the jury found him guilty as a principal, as the person who lit him up. Then the absence of this statement was critical. Critical. Because if the jury had accepted that statement, as well they should. Because it comes from a participant who is talking to a person who resides in the house. It's a statement in furtherance of the conspiracy. It's an admission by a party. We are talking about just that one line, right? I mean, it's not as if the statement is a multi-paragraph statement that provides context and texture to what happened. We are just talking about the one line, aren't we? One line isn't enough to convict him. Well, but it's standing in juxtaposition to everything else that the judge just posed. That's true. But it would have given the jury a whole different slant. They would have viewed this case through a different lens. So is it your position that had they heard this, that they might be more inclined to disbelieve or find not credible those various witnesses who said that he was the principal? Yes. It would have undermined their testimony. And it would have been a large step toward reasonable bail. You know, even if we could get to the Chambers case, the Supreme Court case from 1973, the factors in there require, in order to have a statement admitted that otherwise was excluded, that it exculpate the defendant. And we'll be going back and forth and telling you we're not sure that it really does, especially on conspiracy. It has to be made spontaneously in the statement that Rodriguez wasn't made spontaneously. It needs to be corroborated by other evidence, and we don't have any other corroboration of the statement that Rodriguez. Well, you have evidence that Vasquez was involved in the crime. But, correct. Certainly. But not that Vasquez solely, without the involvement in any way of Mr. Burnside, set Mr. Bell on fire. I mean, it's a really uphill climb to have one statement that, basically, you got one statement of Vasquez saying, I set the guy on fire. How does that counter all of the other statements made that Mr. Burnside did it? I mean, how does it, you know, just completely erase them? It can't really do that. Well, it doesn't completely erase them, but you're looking for reasonable doubt. But, again, back to Chambers. The statement to Rodriguez was not spontaneous. It doesn't have to be. The statement in Chambers was three confessions, not spontaneous. But isn't that, basically, as I look at the rule in Chamber, that they were made spontaneously to close acquaintances, corroborated by other evidence, unquestionably incriminating, did not benefit the person supposedly who had made the testimony, and could have been contradicted? Anyway, it doesn't seem even there. I mean, every incremental step that we go here, it doesn't seem that it fits here, that a co-conspirator can get off because a statement under state law was kept out, that the other person was actually the one who pulled out the lighter and started Mr. Bell on fire. He's not going to get off. He would get a new trial, and he would get a trial where his jury focused on the proper issues, with all of the evidence. There's no reason to exclude the statement made to Jeffrey Rodriguez. Because the jury instructed that they had to be unanimous with respect to which theory of liability? No, no. Why isn't that your objection? Because it plays into my hand, because we don't know what they did, and jurors could have found him, like the Superior Court found him, to be the one who set him on fire, the principal. And if they did that without this evidence, we say that's fundamentally unfair. But there's nothing under Pennsylvania law that requires the state to identify that you must find a countess liability, an accomplice liability. For instance, federally, it happens all the time. You have a substantive drug count, and you also charge 18 U.S.C. Section 2. And you instruct the jury as to what aiding and abetting does, but you don't tell the jury you must find aiding and abetting, or you must find a person guilty of the substantive underlying count. So what's different here? What's different here is that the... Does the Pennsylvania law require it? If it doesn't require it... Six jurors could have found him guilty as a principal and six as an accomplice. Without this evidence, it's fundamentally unfair. You can't let him go to the jury as a principal and exclude this evidence at the same time and maintain that due process was met. Why don't we hear from Mr. Gonzales, and we'll get you back on rebuttal. Good afternoon. May it please the Court, Andrew Gonzales, on behalf of the respondents, or the appellees in this case, Mike Wojnarowicz, the Attorney General for the Commonwealth of Pennsylvania, District Attorney of Lancaster County. I'll apologize to the Court. My voice is a little hoarse. I've been dealing with a sinus infection. No problem. Keep your distance. Very good, sir. I'll stay right here. If we don't give deference, or if we do not give deference to the result of the Superior Court's decision as to any of its particular opinions, do we review that decision de novo? No, Your Honor. I would submit, as we did in the brief, the Commonwealth in the brief, that you adopt the holding of the Sixth Circuit from errors. What they do is they said, we're going to look at this. We have a fractured opinion. And their fractured opinion was basically along the same lines. You had a lead opinion, a concurrence, a dissent. They said, we're going to look at this, and we're going to give deference to the result, as Your Honor indicated in the beginning with opposing counsel. So you give deference to that result, and then what you look at is the result. I mean, essentially, the result is that there's no due process violation. They find that. I mean, this was largely. . . Or is it the opposite? I think the result is that there was no state evidentiary law violation. There was no. . . And also there was no due process violation. The majority said there was a state evidentiary law violation. Did they not? Two judges said that there was a violation. One said it was harmless. So one would have said not violate due process. And that judge joined. The judge who said there was no state law violation, in effect. And I would submit to the court that if there's no state law, evidentiary law violation, how can there be a due process violation? Why would we go to Ayers when we have Simmons on the beard? And Simmons, you know, looks to Marx, you know, the Supreme Court statement, on what you do in this situation. Quite frankly, Your Honor, I do not have a very good response for that, to be honest. I think when I did the research for this, I looked at Ayers in the sense that it was an opinion identical to and breakdown as this. And I think it applies. . . Ayers kind of applies the principles of comedy and federalism that are embodied in the AEDPA by giving an independent review but while still granting deference to the decision where. . . If Andrew Simmons is, it's our court. Correct. That is correct. That's a good thing. And it also deals with the Pennsylvania Supreme Court, which is also, I think, a good thing here. And well, let me help you. Let me read what I think is an important quote. If you don't have it in front of you, I'll read it slowly. I do have Simmons, Your Honor. Okay, so then look at if you have the Fed Reporter 3rd, 232, left column. It talks about Marx in the same breath. It's talking about reviewing a Pennsylvania state court opinion. We're in essentially the same procedural posture. So I'm just wondering why would we go to the Sixth Circuit when we have something. If you're looking at Marx, Marx is obviously pre-AEDPA. Looking briefly at it, I gave a quick scan. And I would also note that if you continue on in Simmons going on to page 233. . . Wait, you're saying that somehow the AEDPA can overrule the Supreme Court's decision in Marx? I guess that is how that came out, isn't it? It did come out that way. It certainly did. I think that's applying pre-AEDPA standards. I think there's . . . Well, Marx is only instructive as what do you do in this particular instance when there . . . How do you figure out what the ruling of the court is and what you need to be bound by and so forth. That really doesn't matter necessarily whether it's pre or post. I mean, obviously, Simmons is a 2009 opinion. Right. And in looking at Simmons, they did note . . . This court did note the fractured nature of the court's decision. I believe they actually found it to not really matter in this particular case because it wasn't an adjudication of the merits on that issue with that fractured decision. It was on page 233. They continue on. They say, however, the amount of deference afforded to this aspect of the Pennsylvania Supreme Court's decision is irrelevant. Because even if they . . . even if we assume deferential standard, the district court was correct in rejecting the state court's overall conclusion. So they're looking at it. I don't know that . . . So when I looked at Simmons, I didn't think it was necessarily instructive on how exactly this should be looked at, Your Honor. And that is why I went to Ayers. What if we walked through this case the same way that Simmons walks through, using Marx? Where do we end up with respect to this decision? What is the narrowest conclusion that you reach from this plurality opinion? I think the narrowest conclusion you reach is, and I think the court is right, in a sense the concurring opinion did touch on the issue of due process, saying, you know, it didn't . . . in fact, it wasn't a fundamentally fair trial. He's entitled to a fair trial but not a perfect trial. And so you have a decision from one judge saying it doesn't violate a state court rule. Okay? It's the proper evidentiary decision. And then we have another judge saying it doesn't violate his right to a fair trial. It's harmless. And you put those two together, I think the court can look at that and say, okay, based on this analysis, you can give deference to the decision of the state superior court that there wasn't a violation, either of the commonwealth's own evidentiary rules or of due process. And that is embodied within those two decisions, kind of somewhat melded together. I hope that answers. How do you respond to your opponent's argument that there are two different theories under which you argued that Mr. Burnside could be found guilty of second-degree murder, either as a principal or as a co-conspirator, and virtually all the evidence talked about him as a principal? And if there's something that undercuts that evidence, that would help an argument to say that you should disbelieve all of that evidence because there are other reasons to impeach those witnesses, and they all said he was the principal. I would respond that there's actually a fair amount of evidence as well that he's involved as a co-conspirator. If you look at the evidence induced at trial, there's testimony given some of the prior interactions with Mr. Burnside, Mr. Vasquez, and the victim, Mr. Bell. This is a common theme involving these three individuals. Mr. Vasquez and Mr. Burnside, this is what they do. Mr. Bell comes over. He doesn't have money for drugs. We do some sort of stunt. The stunts have previously included lighting him on fire. He goes, again, to the same location without money to buy narcotics. He's seen with the defendant. He's seen with Mr. Vasquez. His immediate statement right after this occurred to Mr. Parker, I believe, was, they burnt me up. Now, there's also a large amount of evidence, you're correct, and I think Judge Ambrose, Judge Greenway, you all went through the large amount of witnesses that say, Mr. Burnside said, I lit a guy. I burned a guy. I think taking all that evidence, there's a lot of evidence of principle. There's evidence that they did it in consort. One more statement, or one statement of the co-conspirator who said, yeah, to a 15-year-old boy, somewhat, and I view it in a sense of bragging, that I burned a guy last night. That's why the police are here. I don't think that's going to undercut the majority of the evidence that says, Mr. Burnside was likely the principal, and also that Mr. Burnside was involved as a co-conspirator. This was something they did together. I hope I have addressed the court's questions. If there's any other questions, I would be happy to answer them. Okay. No further questions. Thank you. Thank you very much. Mr. Gelman. It's not sufficient to bring a felony murder prosecution and just say these guys were together. It's obvious they were in consort. Without getting into the law of conspiracy or accomplice. Now, conspiracy requires proof of an agreement between the two. These jailhouse witnesses say nothing that would lead one to say that there was an agreement. They say they were together. You're not representing Vasquez, right? I don't get it. Everyone says that your client's the actor. Yes. I'm sorry. I'm missing your point. I'm saying if you're going to try and rationalize it by saying the jury could have found him guilty as an accomplice or as a co-conspirator, I think that would be a wrong way to look at the case. It's the jury that has to make the finding. And this jury was not led or guided so it could make a proper finding. This jury had evidence. The argument against the conspiracy would seem to be a stronger argument on behalf of Mr. Vasquez as opposed to Mr. Burnside. So I'm not sure what your argument is with respect to conspiracy. If you find Burnside guilty of being the principal, then it's easy to say that he conspired with somebody. But if you do not deal the blood, if you're there, and if a jury has asked to find you guilty because you were there, then that jury has to find that you actively engaged in the crime. And there's no specifics here. Just a lot of generalities from a lot of jailhouse witnesses that could have been overcome had the statement, I burned a guy last night, come in. There seems to me to be no reason to disarm the defense like this. This was a significant item of the defense. This was not something casually made up. This was told to the detective by the witness and written down by the detective. The jury had every right to view this case through the lens of But if we find that he is not the actor, if he did not light him on fire, then we have to find accomplice or co-conspirator. And the jury didn't do that. The jury was invited to find him guilty as the principal without this evidence. But the jury also found him guilty if conspiracy did it not. Yes, but they could have done that by finding him guilty as the principal. They could have. They could have done it either as the principal or as an accomplice, right? Yes. Yes, but if they find him guilty as the principal, then it's much easier for them to find that he conspired with Vasquez. Right. And it's the jury who must make this decision. An appellate court should not go through the evidence and say, oh, he's obviously guilty. That's not Frankfurter, Justice Frankfurter. Stop that in Bolenbach. That it's not up to an appellate court to decide that the evidence shows guilt, and guilt can be spelt out of the record. What is important is that the jury be given proper instructions and proper guidance to make the decision. Right. And this jury was invited to find him guilty as a principal without this evidence. It's like taking a gladiator and saying, you know, you have a sword and a knife. Is there anything else you want to add? Okay. Thank you very much. Thank you to both counsel for a well-presented argument. We'll take the matter under advisement. Glad to see you back in action, Mr. Gelman. Thank you, sir. Thank you.